CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

March 30, 2024
LAURA A. AUSTIN, CLERK
BY:
/s/T. Taylor
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **DEMMERICK E. BROWN,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:22CV00251 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **T. COYNER, ET AL.,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendants. | ) | |
| | ) | |

*Demmerick E. Brown, Pro Se Plaintiff; Daniel T. Sarrell and Jamie Wood, WOODS ROGERS VANDEVENTER BLACK PLC, Roanoke, Virginia, for Defendant Coyner; Brittany E. Shipley and Rosalie P. Fessier, TIMBERLAKE SMITH, Staunton, Virginia, for Defendant Wiedemann; Stacie A. Sessoms, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA CRIMINAL JUSTICE AND PUBLIC SAFETY DIVISION, Richmond, Virginia, for Defendants White, Graham, Chittum, Holloway, Manis, Amonette, Wyatt, Dillman, Clarke, and Robinson.*

The plaintiff, Demmerick E. Brown, an unrepresented Virginia inmate, filed this action under 42 U.S.C. § 1983, alleging that the defendants failed to provide him with timely dental care. Now before me are three motions to dismiss Brown's Second Amended Complaint, Brown's responses, and the defendants' replies. After review of the record, I conclude that the motions to dismiss must be granted in part and denied in part.

## I. BACKGROUND.

The claims alleged arose while Brown was confined at Augusta Correctional Center (Augusta), a prison operated by the Virginia Department of Corrections (VDOC).[1] In Brown's initial Complaint, Brown named as defendants a dentist and a dental assistant whom he had encountered at Augusta and various administrators at Augusta and within the VDOC. In his First Amended Complaint Brown omitted the dental defendants. The other defendants (the VDOC defendants) filed a Motion to Dismiss, ECF No. 33.

Brown later moved to reinstate his claims against the dental defendants, and I construed and granted Brown's motion as seeking leave to file a Second Amended Complaint. The court warned Brown that his Second Amended Complaint "must be a new pleading to take the place of his current Amended Complaint; it must name all the defendants that he intends to sue in this case, state the claims he raises against each defendant, and state sufficient facts about relevant events and about what each defendant, personally, did or did not do that violated his rights." Order 1, ECF No. 44. Shortly after entry of that Order, the court received and docketed Brown's lengthy response to the defendants' Motion to Dismiss. This submission also asked

---

[1] Brown is now incarcerated at a different state prison facility.

for summary judgment based on an attached affidavit and exhibits primarily consisting of grievances and request forms Brown had filed.

Brown thereafter filed his Second Amended Complaint, the pleading now before the court. It names as defendants several VDOC administrators and prison officials (the VDOC defendants): Harold W. Clarke, former VDOC Director; David A. Robinson, VDOC Chief of Operations; G. Holloway, Chief Regional Administrator; Carl Manis, Regional Administrator; P. White, Warden; L. Graham, Operation Manager; Mark Amonette, Chief Physician; Adam Wyatt, Chief Dentist; and Jeffery Dillman, Health Services Director. Brown also names as defendants three medical providers at Augusta — T. Coyner, Dental Assistant; K. Smith, Institutional Physician; and Werner Wiedemann, Dentist. Brown alleges that while he was confined at Augusta in 2020 and 2022, the defendants' actions deprived him of adequate dental care and constituted deliberate indifference to his serious medical needs related to dental care, resulting in his loss of a tooth. As relief, Brown seeks monetary damages.

In light of Brown's Second Amended Complaint, I dismissed without prejudice the defendants' prior Motion to Dismiss, and Brown's so-called motion seeking summary judgment.

In the Second Amended Complaint (Am. Compl.), Brown states that he is a 64-year-old Black male, "born with a deadly rare heart disease, and infection is the

number 1 threat" because "[i]nfections attack[ ] only [his] heart valves."   Am. Compl. 6, ECF No. 56.   Brown claims he has had "[four] open heart surgeries as the result of infection attacking and damaged [sic] the heart valves" and that he "has two mechanical heart valves and a IACD-pacer."   *Id.* at 6–7.   Brown states that because of his heart issues, "untreated cavities lead to infection and infection poses a deadly threat" that can cause death.   *Id.* at 8.

In November 2020, while Brown was confined at Red Onion State Prison (Red Onion), he "developed gum infection as the result of a temporary filling that had deteriorated."   *Id.* at 8.   The institutional physician prescribed antibiotics and referred Brown to the dentist.   The dentist found that Brown had "strong healthy teeth[ ]," that permanent fillings needed to be replaced, and a temporary filling had deteriorated, but with minor repairs, no teeth required extraction.   *Id.* at 9.   The dentist removed the temporary filling, cleared out the bacterial infection, and put in a temporary filing.   The dentist advised Brown that she was unable to fully repair the damaged tooth because of COVID-19 restrictions on medical and dental care. "But because of [Brown's] heart condition and [his] mechanical heart valves," she would consult with officials in Richmond to seek "approval to treat [him]" despite the restrictions.   *Id.* at 10.

On April 20, 2021, after Brown was transferred to Augusta, he developed an infection in his gums, notified the medical department, and was referred to see the

dentist contracted to care for inmates at Augusta, Dr. Wiedemann.  After examining Brown's teeth, Dr. Wiedemann stated that "Tooth 24 was the cause of the recurring infection and the tooth need[ed to be] pulled out to stop the infection recurring."  *Id.* at 10.  Brown refused to allow the extraction, based on the prior dental examination in November 2020 when the dentist found no extraction was necessary.   Dr. Wiedemann explained to Brown that he could not render non-emergency dental treatment, due to "VDOC COVID-19 medical and dental restriction[s]."  *Id.* at 11. He also told Brown that the waiting list for nonemergency dental care was "backed-up at least [two years]" and that it would "be in [Brown's] best interest to have the tooth pulled [rather] than having to wait" to receive care.  *Id.* at 11.  Brown argued that his heart condition made his dental needs an emergency and urged the dentist to seek approval from officials in Richmond to treat it as such, but the dentist refused to do so.

Brown began a campaign to obtain the dental care he believed he should receive despite the COVID-19 restrictions prohibiting onsite, nonemergency dental procedures.  He submitted complaint forms, grievances, and letters to Warden White at Augusta and to VDOC administrators — defendants Manis, Holloway, Robinson, Clarke, Amonette, Wyatt, Graham, and Dillman.[2]  Brown claimed that the prison

---

[2] Brown states that family members also contacted VDOC officials about obtaining adequate dental care for him because of his cardiac issues. Am. Compl. 29, ECF No. 56.

system's COVID-19 restrictions were "unconstitutional." *Id.* at 12. None of these defendants responded to Brown's argument.

When Brown developed a gum infection for the third time, in August 2021, the dentist allegedly refused to treat him, blaming "inadequate dental staff, resources, time, and materials, available." *Id.* at 13. In making this explanation, the dentist cited VDOC Operating Procedure (OP) 720.6, but did not mention COVID-19 restrictions. Brown asserts that OP 720.6 is also unconstitutional, because it allows providers to deny inmates' necessary dental care merely because a particular prison facility does not have adequate dental staffing and resources available. Brown asserts that when a facility's insufficient resources cause an inmate's dental care to be delayed for months, its staff must send an inmate with emergency dental needs to an outside provider for medically necessary treatment. The dentist, however, reported to the warden that Brown's dental needs could be met using the institution's facilities and that there was "no need for outside treatment." *Id.* at 14.

Brown also alleges that the institutional physician, Dr. K. Smith, was aware of Brown's serious medical condition and the fact that dental issues could pose a "deadly threat" to him as a result. *Id.* at 15. Yet, Dr. Smith refused to ensure that Brown received dental care by "sending him to an outside dental facility in the face of threat to his life, health, or safety." *Id.*

In September 2021, Augusta officials transported Brown for examination and a "heart procedure" by a cardiologist at a local hospital. *Id.* at 19. Brown informed this provider of his recurring gum infections over the prior nine-month period, related to "deteriorating fillings and untreated cavities." *Id.* at 19–20. The cardiologist told Brown that it was "not in [his] best interest to suffer untreated infection," since "the consequence" for him could be "deadly." *Id.* at 20. This doctor said he would consult with Dr. Smith about arranging a dental appointment for Brown outside the prison so that Brown did not "go untreated for the infection." *Id.* at 21.

When Brown returned to Augusta, he met with Dr. Wiedemann about the issues the cardiologist had raised. The dentist said that Dr. Smith, as Brown's primary care provider, could send him to an outside dental provider.[3] Brown then spoke to Dr. Smith and told him the cardiologist's concerns about Brown "not being properly treated for infection" and the cardiologist's statement that he would call to see if Brown could have an outside dental appointment. *Id.* at 22. Dr. Smith allegedly "made it very clear that he did not want to intervene sending [Brown] out to a dentist because he [did] not want to create animosity or hostility" by "second-guessing" the decision of Dr. Wiedemann, a private contractor. *Id.* at 22–23. Brown

---

[3] At some point in seeking outside dental care, Brown told prison officials that he could "invoke [his] health insurance to cover cost[s]" for the outside care. Mot. Summ. J. Attach. 10, Brown Aff. ¶ 17(a), ECF No. 45-10.

relayed to Dr. Smith the dentist's claims that he could not provide nonemergency dental care because of COVID-19 restrictions and inadequate resources and staffing. But Brown emphasized that his untreated teeth qualified as an emergency because of his heart issues and, as such, should be treated immediately by an outside dental provider.  Dr. Smith said he would talk to Dr. Wiedemann.  Later, Dr. Smith told Brown the dentist's opinion that Brown "only needed one tooth extracted to cure the infection problem, Tooth #25."  *Id.* at 24.  Dr. Smith did not refer Brown for outside dental care in 2021.

Brown alleges in other submissions that after he filed his lawsuit in May of 2022, prison officials "immediately" arranged for him to see an outside dentist several times.  Brown Aff. ¶ 4, ECF No. 45-10.  On September 12, 2022, Brown was scheduled for extraction of Tooth 24, but the treating dentist said the tooth looked good and postponed the extraction.  In October 2022, Brown saw this dentist a second time.  After taking X rays, and examining Tooth 24, the dentist declined to extract it, finding that it had strong bone structure, good gum color, no active infection, swelling, sensitivity, or bleeding.  Brown alleges that ultimately a provider decided that Teeth "31-29" were the cause of his gum infections, not Teeth "24-25,"[4]

---

[4]  In other submissions, Brown offers different tooth numbers as being identified as the cause of his infections.

as Dr. Wiedemann had said.  Resp. Opp'n 5, ECF No. 89.  He also claims that during the delay of dental care in 2021 and 2022, he developed "seven more cavities."  *Id.*

Brown claims that Augusta dental assistant T. Coyner conspired with the dentist, Dr. Wiedemann, in a "nefarious scheme" to "avoid treating" Brown "from April 20, 2020 until September 2022."  *Id.* at 27–28.  When the dentist blamed his claimed inability to perform nonemergency dental treatment for Brown on COVID-19 and then on inadequate resources, Coyner "repeatedly endorsed the dentist['s]" reasoning.  *Id.* at 28.  When Brown and his family pursued grievances and wrote letters to VDOC officials about his need for immediate dental care or to complain that the restrictions on nonemergency dental care were unconstitutional, defendants White and Dillman "determined that [Brown] was not being denied or deprived of dental care.  *Id.* at 30.  But none of the VDOC officials contacted would respond to "the issue being challenged."  *Id.*.  Brown alleges that Coyner "recorded all of [Brown's] grievances, requests, letter complaints" addressed to VDOC administrators and "repeatedly misrepresented to prison officials the fact that the dentist did deny him dental treatment based on the alleged VDOC COVID-19 policy."  *Id.* at 30–31.  Brown asserts, "From April 20, 2021 til September 2022, [Coyner] responded to all of his complaints."  *Id.* at 31.  For that reason, Brown asserts that Coyner was personally involved in a "conspiracy to obstruct justice," apparently through alleged deliberate indifference to his serious medical needs that

"resulted in the los[s] of teeth[ ]." *Id.* at 31, 32.  He also alleges that Coyner "l[ied] and falsif[ied] records." *Id.* at 32.

Brown alleges that defendant White had a personal awareness of Brown's history of open-heart surgeries, mechanical heart valves, and pacemaker.  White was present in September 2005 at Nottoway Correctional Center when Brown suffered heart failure, and the governor "intervene[d]" to have him transported to a hospital for open heart surgery.  *Id.* at 34.  White later checked on Brown's health when White worked at River North Correctional Center in 2018.   After Brown was transferred from Red Onion to Augusta on April 8, 2021, where White was then warden, White would check on Brown's medical status and "was made aware by medical staff when [Brown] transported out to medical appointments."  *Id.* at 36.

On August 7, 2021, Brown told White that he had a gum infection that had developed because of deteriorated fillings that the dentist refused to treat as an emergency, based on COVID-19 protocols or lack of resources.   White refused Brown's request for outside dental treatment, stating that "the dentist [had] informed him that [Brown's] condition can be managed at [the] facility."  *Id.* at 37–38.

Brown contends that defendant Dillman responded to every grievance, letter, or complaint that Brown filed with other defendants (Holloway, Manis, White, Clarke, Robinson, Amonette, and Wyatt).  He claims that Dillman also responded to Brown's family member's inquiries to Clarke and Robinson about Brown's

condition.  Yet, Dillman responded to all of these complaints by ruling them to be "unfounded" after determining that Brown "was not being deprived [of] dental treatment." *Id.* at 39.

Brown asserts that as Augusta's grievance coordinator, defendant Chittum's handling of Brown's grievances and appeals deprived him of the right to petition the government for redress and contributed to depriving him of other constitutional rights as well.  Specifically, Brown claims that Chittum rejected some grievances on the ground that Brown "cannot bring a grievance complaint [against] high ranking officials" in the VDOC administration.  *Id.* at 41.  Brown also asserts that Chittum engaged in a conspiracy "to protect these officials having any involvement in the constitutional violation and having actual knowledge" of Brown's issues and medical needs.  *Id.*

Brown contends that defendant Graham, as Augusta's Operation Manager, is "responsible for the day to day operations" and for "ensuring that all staff and inmates are in compliance" with federal and state laws and prison regulations.  *Id.* at 42.  Brown alleges that he informed Graham that the dentist was denying him dental care, blaming COVID-19 restrictions and lack of staffing because the dentist described Brown's dental needs as a nonemergency.  Brown claims that Graham then "blocked" some of his attempted grievances to VDOC administrators about his

"common sense" right to outside dental treatment, if VDOC policies did not allow such treatment at the prison. *Id.* at 44.

Liberally construed, Brown's Second Amended Complaint alleges the following claims:

1. Dr. Wiedemann was deliberately indifferent to Brown's serious medical need for dental treatment, in violation of the Eighth Amendment;

2. Defendants Manis, Holloway, Robinson, Clarke, Amonette, Wyatt, and Dillman were deliberately indifferent to Brown's serious medical need for dental treatment, in violation of the Eighth Amendment;

3. VDOC restrictions allowing delay or denial of nonemergency dental treatment, based on COVID-19 restrictions or shortages in facility staffing and resources, are unconstitutional, and VDOC administrators Clarke, Robinson, Amonette, Wyatt, and Dillman, as policy makers, should be liable because application of these policies violated Brown's Eighth Amendment rights by delaying necessary dental care;

4. Dr. Smith was deliberately indifferent to Brown's serious medical need for dental treatment, in violation of the Eighth Amendment;

5. Dental Assistant Coyner interfered with Brown's ability to redress his grievances with government officials in violation of his First Amendment rights; and conspired with Dr. Wiedemann's denial of proper dental treatment for Brown, in violation of Brown's Eighth Amendment rights;

6. Warden White was deliberately indifferent to Brown's serious medical need for dental treatment, in violation of the Eighth Amendment;

7. Defendant Chittum interfered with Brown's ability to redress his grievances with government officials and conspired to protect

administrative officials from learning personally of Brown's complains of denial of proper dental treatment in violation of his First and Eighth Amendment rights; and

8. Defendant Graham was deliberately indifferent to Brown's serious medical need for dental treatment, in violation of the Eighth Amendment, and interfered with Brown's ability to redress his grievances with government officials in violation of his First Amendment rights.

Defendant Coyner and Dr. Wiedemann have filed separate motions to dismiss, and the VDOC defendants have filed a joint Motion to Dismiss.[5]

## II. DISCUSSION.

### A. The Motion to Dismiss Standard.

"A Rule 12(b)(6) motion to dismiss tests only the sufficiency of a complaint."

*Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021).[6]  In considering a Rule 12(b)(6)

---

[5] Defendant Dr. K. Smith is not a party to any of the pending motions.  He has filed a Waiver of Reply, ECF No. 77, as permitted by 42 U.S.C. § 1997e(g)(1), although he has also stated in conclusory form various affirmative defenses, including failure to state a claim upon which relief may be granted.  Brown has filed a response to Smith's Waiver, arguing against dismissal of the claims against Smith and asserting that he is entitled to summary judgment against Smith.  Rebuttal and Mot. Summ. J., ECF No. 105.  Brown's submission asserts that as Brown's primary care medical provider from April 8, 2021, until December 28, 2022, Smith failed to ensure that Brown received his desired dental care, in light of other serious medical conditions.  Brown has attached request forms and medical records.  I have reviewed these submissions and cannot find from them that Brown has demonstrated either the absence of disputed material facts or that he is entitled to summary judgment as a matter of law on any claim against Smith. Therefore, to the extent that Brown moves for summary judgment against Smith, I will deny that motion.  However, pursuant to § 1997e(g)(2), I will direct Dr. Smith to either file a motion for summary judgment or prepare for trial.

[6] I have omitted internal quotation marks, alterations, or citations here and throughout this Opinion, unless otherwise noted.

motion, "[t]he district court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). A complaint must plead facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim includes factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* "[T]he court need not accept legal conclusions, threadbare recitals of the elements of a cause of action, or conclusory statements." *Langford*, 62 F.4th Cir. at 124.

"[C]ourts are obligated to liberally construe pro se complaints, however inartfully pleaded." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 540 (4th Cir. 2017). Liberal construction, however, does not allow me to construct constitutional claims for Brown based on conclusory statements alone. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) ("Principles requiring generous construction of pro se complaints are not . . . without limits," and a reviewing court "cannot be expected to construct full blown claims from sentence fragments");

*Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999) ("A pro se plaintiff still must allege facts that state a cause of action.").

### B. Eighth Amendment Claims.

Prisoners have a constitutional right to necessary medical care for serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "Deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A deliberate indifference claim consists of two components, objective and subjective." *Id*.

Objectively, "the inmate's medical condition must be serious" in the sense that it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Formica v. Aylor*, 739 F. App'x 745, 754 (4th Cir. 2018) (unpublished).

> [A] "tooth cavity is a degenerative condition, and if it is left untreated indefinitely, it is likely to produce agony and to require more invasive and painful treatments, such as root canal therapy or extraction," and "presents a serious medical need." Furthermore, an abscessed tooth "is not a simple toothache. It is a bacterial infection of the root of the tooth, and it can spread to the adjacent gum and beyond — way beyond. It is often painful and can be dangerous.

*Id*. at 756.

Subjectively, the prison official must have "actual . . . knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's

[own] action or inaction." *Jackson*, 775 F.3d at 178. "[W]hen a medical professional of a jail facility knows of a serious medical need, the Eighth Amendment requires reasonable action." *Formica*, 739 F. App'x at 757. "The necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally *denying* or *delaying* medical care, or intentionally *interfering* with prescribed medical care." *Id.* at 754. Furthermore, to be unconstitutional, a defendant's conduct must have been "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier ex rel. Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

    1.  Dr. Wiedemann.

Dr. Wiedemann argues in support of his Motion to Dismiss that Brown's claims against him present nothing more than a patient's disagreement with a medical provider's professional judgment as to the appropriate course of treatment. *Jackson v. Sampson*, 536 F. App'x 356, 357 (4th Cir. 2013) (unpublished) ("An inmate's mere disagreement with the course of treatment provided by medical officers will not support a valid Eighth Amendment claim."). At this stage in this case, I cannot agree with this characterization of Brown's allegations against the dentist, however. "[D]elay can rise to the level of an Eighth Amendment violation

when the delay results in 'some substantial harm to the patient' such as a 'marked exacerbation of the prisoner's medical condition' or 'unnecessarily prolonged an inmate's pain.'" *Wilder v. Krebs*, No. 2:17-763-CMC-MGB, 2018 WL 4020211, at *3 (D.S.C. Aug. 23, 2018) (citing *Formica*, 2018 WL 3120790, at *8).

Taking Brown's factual allegations in the light most favorable to him, Dr. Wiedemann failed to respond reasonably to an excessive risk that Brown's gum infection would be exacerbated by deteriorating fillings and that the infection (or a future one caused by unrepaired fillings or cavities in Brown's mouth) would attack Brown's heart valves and result in serious harm or death. Brown's allegations imply that Dr. Wiedemann could have cleaned and repaired Tooth 24 to resolve Brown's infection in April 2021 (as the dentist at Red Onion had done just months earlier) so that Brown could retain that tooth. Instead, Brown alleges, Dr. Wiedemann offered two options only: extraction of the tooth or, in the alternative, waiting for years to have Tooth 24 repaired, given the backlog for nonemergency dental procedures. Brown also alleges that when he developed a second infection of his gums in August 2022, Dr. Wiedemann relied on OP 720.6 to say that Augusta did not have resources at that time to provide care, and Brown would have to wait. He allegedly refused to classify Brown's infection-prone mouth as an emergency that would allow him to receive priority, nonemergency dental care or treatment by an outside provider.

-17-

At this stage of the litigation, I conclude that Brown's allegations state a possible deliberate indifference claim — that Brown presented with a serious medical need for treatment to address his current and recurring gum infections that put his heart valves at risk, that Dr. Wiedemann knew of the seriousness of that risk, and that he responded unreasonably by proposing only Brown's loss of a tooth or no immediate treatment, when other alternatives not involving permanent tooth loss were available (offering temporary repair as the Red Onion dentist had done or sending Brown to an outside medical facility for dental work to address his infection issue).  I recognize that the dentist may be able demonstrate on summary judgment that his response was reasonable under the circumstances, but that information is not before me now.  Therefore, I will deny Dr. Wiedemann's Motion to Dismiss.

2.  Administrative Defendants.

In Claim 2, Brown asserts that Manis, Holloway, Robinson, Clarke, Amonette, Wyatt, and Dillman were on notice that Brown had a serious need for dental care to prevent a risk to his heart and that he needed, but was not getting, timely and necessary dental treatment, based on Dr. Wiedemann's citation of COVID-19 policies and OP 720.6 and a refusal of care outside the prison facility. In Claim 3, as I have construed Brown's allegations, he asserts that unspecified policy makers among the defendants are responsible for unconstitutional dental care

policies, namely, the COVID-19 restrictions and OP 720.6, that delayed Brown from getting appropriate dental care to protect his health.[7]

Included in Brown's many exhibits in the record are copies of grievances, complaint forms, and letters including this information that were addressed to, or answered by, these defendants.  Brown also alleges that Dillman responded to most of his VDOC-directed communications and to his family's calls to Clarke and Robinson about his dental care issues.  Documents in the record appear to indicate that when Dillman or the regional administrators, Manis and Holloway, would contact the Augusta dental staff about Brown's dental complaints; then, Coyner (as dental assistant) would convey to them that the dental department could focus only on emergency conditions and nonroutine dental procedures like Brown's would be addressed as soon as staff and resources allow, citing COVID protocols or OP 720.6.

To the extent that Brown claims any of these administrative defendants could be held vicariously liable for the alleged unconstitutional conduct of subordinate VDOC employees, his claims must be dismissed.  *Wilcox v. Brown*, 877 F.3d 161,

---

[7] The defendants state that Brown only alleges making complaints about the policies being unconstitutional, but that he does not assert a claim on this issue.  Mem. Supp. Mot. Dism. 1 n.1, ECF No. 69.  Liberally construing Brown's allegations and his other submissions, however, I conclude that Brown has asserted a claim challenging the policies' constitutionality.  Given his descriptions of the administrative defendants' professional titles, I construe the claim as being posed against Clarke, Robinson, Wyatt, Amonette, and Dillman, because they are the more likely VDOC policy makers on medical and dental procedures.

170 (4th Cir. 2017). Similarly, I must dismiss Brown's claims seeking monetary damages against any of the defendants in their official capacities, because such relief is not available via § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989).

These defendants also argue other defenses. Ordinarily, prison officials without medical expertise, or those not personally involved in making decisions about an inmate's appropriate course of medical or dental treatment, may rightfully rely on the professional decisions of that inmate's treating provider or providers. *Miltier*, 896 F.2d at 854. In general, nontreatment staff "cannot be liable for the medical staff's diagnostic decisions" and "cannot substitute their judgment for a medical professional's prescription." *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002). Furthermore, to hold a supervisory official liable for misconduct by a subordinate employee, the plaintiff must state facts showing that: (1) the defendant had actual or constructive knowledge that subordinate[s]' misconduct "posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff"; (2) the defendant's "response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) an "affirmative causal link" existed between the defendant's inaction and the plaintiff's constitutional injury. *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014).

The defendants contend that I should dismiss Brown's claims based on lack of alleged personal involvement in, or notice of, the dental and medical treatment decisions of which Brown complains. I conclude that Brown's broad allegations and evidence of attempts to put these defendants on notice of his dental needs push past their defenses at this stage of the case, particularly because his constitutional challenges relate to such a serious risk to his life and to dental treatment policies for which several of these defendants may be responsible. I base this decision on my review of the many submissions Brown made earlier in the case that he failed to incorporate into his Second Amended Complaint even after receiving a court order directing him to include all his supporting facts in that pleading. Nevertheless, I conclude that my obligation to construe pro se pleadings liberally must control here. Accordingly, I will direct that the factual allegations and exhibits Brown has submitted in the following submissions (ECF Nos. 45, 47, 89, 104, 105, 106, and 109) are now incorporated by reference into his Second Amended Complaint as factual support for the claims raised in that pleading as I have construed them.[8] Therefore, the parties should consider these submissions as part of that pleading when they address his claims at the summary judgment phase of this case. I must

---

[8] To the extent that Brown may attempt to allege any additional claims in these responsive pleadings, however, I do not consider such claims to be part of this lawsuit. Brown cannot use responses to the defendants' motions to amend his claims. *Cloaninger ex rel. Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009).

deny the Motion to Dismiss as to Claim 2 against the following defendants: Manis, Holloway, Robinson, Clarke, Amonette, Wyatt, and Dillman, and as to Claim 3 as to defendants Robinson, Clarke, Amonette, Wyatt, and Dillman in their personal capacities.  I will grant their motion as to any claims against them based on vicarious liability or in their official capacities.

3.  Augusta Defendants Coyner, Chittum, White, and Graham.

Brown alleges in Claim 5 that Dental Assistant Coyner conspired to deny Brown appropriate dental care.  Coyner moves to dismiss this Eighth Amendment aspect of Brown's claims against her, and I find her argument to be well taken. Brown does not allege, nor does Coyner's title indicate, that she had the medical expertise or authority to question Dr. Wiedeman's professional decisions about appropriate care for Brown's dental issues.  Rather, Coyner could rightfully rely on the dentist's medical judgment regarding dental care for Brown.  *Miltier*, 896 F.2d at 854.  Accordingly, Coyner cannot be held liable under § 1983 for following the treatment plan Dr. Wiedemann prescribed.

Moreover, Brown's submissions reflect that in responding to requests from Brown or other prison officials' inquiries about Brown's dental complaints, Coyner merely reported the same information that Dr. Wiedemann relayed to Brown — that the applicable dental care policies as dictated by COVID-19 protocols or OP 720.6 meant emergency conditions took precedence for dental care at Augusta and that

Brown was on the list for treatment along with other nonemergency dental cases. I find no allegation or exhibit suggesting that she took any action, personally, in deciding or reporting what dental care the Augusta dental department would provide to Brown. I will grant Coyner's Motion to Dismiss as to Brown's Eighth Amendment claim against her.

Similarly, Brown's Eighth Amendment claim in Claim 7 against Chittum, as grievance coordinator at Augusta, has no merit. He does not allege that in her position, she could take any action to change the dental treatment that Dr. Wiedemann or Dr. Smith were offering (or refusing to provide) to Brown.

Chittum also responded to and rejected grievances that Brown directed to VDOC administrators. Brown presents no allegation or evidence that Chittum's responses were based on the content of his requests for dental care, rather than on rules prohibiting the type of grievance in general. Most importantly, I cannot find that Chittum's failure to forward Brown's complaints to administrators showed her knowledge that Brown's dental care needs were serious or that her actions placed him in harm's way. I will grant the Motion to Dismiss as to Brown's Eighth Amendment claims against Chittum.

White, as the Augusta warden, and Graham, as the institutional operations manager, stand in more supervisory roles than Coyner or Chittum do. White allegedly had personal knowledge of Brown's heart issues through contact with him

at other prison facilities over the years. Graham learned of Brown's issues through the inmate's numerous attempted complaints to which Graham responded, addressed to VDOC administrators and/or seeking authorization for outside dental care. White and Graham also arguably had some authority or control over authorizing outside treatment of inmates' dental needs at Augusta. As such, White and Graham are more akin to the VDOC administrative defendants already discussed. Therefore, at this stage of the litigation, I will grant the Motion to Dismiss as to any claim against White and Graham based on vicarious liability or in their official capacities. I will deny the motion as to Brown's Eighth Amendment claim against them in their individual capacities, as they allegedly took no action to address his complaints to them of needing emergency dental care for a serious medical need.

### C. First Amendment and Conspiracy Claims.

Brown contends that Coyner, Chittum, and Graham, through the manner in which they responded to or rejected grievances that Brown attempted to direct toward supervisory officials, blocked his attempts to redress grievances with government officials. This claim has no merit. It is well established that "inmates have no constitutional entitlement or due process interest in access to a grievance procedure. An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process." *Booker*, 855 F.3d at 541. Brown apparently believes that an exception exists if he is seeking to use a grievance procedure to exercise his right to

redress grievances with government officials.  I find no such exception.  Brown's inability to use prison grievance procedures to protest his dental care to officials outside the prison is nothing more than a claim he was denied use of the grievance procedure, which does not state any deprivation of a constitutionally protected right.

Even if Brown is claiming that Coyner, Chittum, or Graham responded to Brown's grievances in some way that violated the VDOC's procedures, such allegations also cannot survive the motions to dismiss.  Prison officials' alleged violations of prison regulations do not rise to the level of a deprivation of constitutionally protected rights so as to be actionable under § 1983.  *Middleton v. Zych*, No. 7:12-CV-00266, 2012 WL 4742777, at * 2, n.7 (W.D. Va. Oct. 4, 2012), *aff'd*, 514 F. App'x 401 (4th Cir. 2013) (unpublished).  For the stated reasons, I will grant the motions to dismiss as to all First Amendment claims.

Brown's conspiracy claims must also be dismissed.  To state a claim of conspiracy under § 1983, a plaintiff must present evidence that the defendants acted "jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right." *Glassman v. Arlington Cnty.*, 628 F.3d 140, 150 (4th Cir. 2010) (citing *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)).  The plaintiff must state facts that, if taken as true, would establish that each member of the alleged conspiracy shared the same conspiratorial objective, that they reached a mutual understanding to try to

"accomplish a common and unlawful plan." *Hinkle*, 81 F.3d at 421.  Allegations of conspiracy that amount to nothing more than "rank speculation and conjecture" are not sufficient, especially when each actor's conduct also suggests innocent interpretation. *Id.* at 422.  Brown's allegations of conspiracy against Coyner and Chittum fall into this latter category of conclusory and self-serving speculation that simply cannot support a reasonable inference that either of them reached an agreement with others to violate Brown's rights.  I will grant the motions to dismiss as to Brown's conspiracy claims against these defendants.[9]

## III. Conclusion.

For the reasons stated, it is hereby **ORDERED** as follows:

1. Brown's submissions seeking summary judgment against defendants Smith, ECF No. 105, and Coyner, ECF No. 106, are DENIED;

2. Dr. Wiedemann's Motion to Dismiss, ECF No. 74, is DENIED;

3. The Motion to Dismiss by the VDOC defendants, ECF No. 71, is GRANTED IN PART AND DENIED IN PART.  The motion is DENIED as to the following claims against all VDOC defendants, in their individual capacities:  Claim 2 under the Eighth Amendment against Manis, Holloway, Clarke, Robinson, Amonette, Wyatt, and Dillman; Claim 3 under the Eighth Amendment against Clarke, Robinson, Amonette, Wyatt, and Dillman; Claim 6 against White; and Claim 8, as to the Eighth Amendment claim against Graham. The motion is GRANTED as to all claims of vicarious liability, all claims against the defendants in their official capacities, all First

---

[9]  Because I have concluded that Brown fails to allege facts stating any actionable claim against defendant Coyner, I also conclude that he has not supported his assertion in that he is entitled to summary judgment on his claims against her.

Amendment and Fourteenth Amendment claims, and all claims against defendant Chittum;

4. Defendant Coyner's Motion to Dismiss, ECF No. 96, is GRANTED;

5. The Clerk shall TERMINATE defendants Coyner and Chittum, who are no longer parties to this case; and

6. Defendants Manis, Holloway, Robinson, Clarke, Amonette, Wyatt, Dillman, White, Graham, Dr. Wiedemann, and Dr. Smith are DIRECTED to file any summary judgment motion within 30 days from the entry of this Order, or the case will be set for a trial as to the claims against these defendants.

ENTER:   March 30, 2024

/s/  JAMES P. JONES
Senior United States District Judge