## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
March 17, 2025
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

|  |  |  |
|---|---|---|
| **DEMMERICK E. BROWN,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:22CV00251 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **T. COYNER, ET AL.,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendants. | ) | |

*Demmerick E. Brown, Pro Se Plaintiff; Grace Morse-McNelis, FRITH ANDERSON + PEAKE, PC, for Defendants K. Smith; Brittany E. Shipley and Rosalie P. Fessier, TIMBERLAKE SMITH, Staunton, Virginia, for Defendant Wiedemann; and Ann-Marie C. White Rene, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA CRIMINAL JUSTICE AND PUBLIC SAFETY DIVISION, Richmond, Virginia, for Defendants White, Graham, Holloway, Manis, Amonette, Wyatt, Dillman, Clarke, and Robinson.*

The plaintiff, Demmerick E. Brown, an unrepresented Virginia prison inmate, filed this action under 42 U.S.C. § 1983, alleging that the defendants failed to provide him with adequate dental care. After review of the record, I conclude that the defendants' pending motions for summary judgment must be granted and Brown's summary judgment motion must be denied.

## I. BACKGROUND.

The claims alleged in this action arose while Brown was confined at Augusta Correctional Center (Augusta), a prison operated by the Virginia Department of

Corrections (VDOC).[1]   Ultimately, he filed the Second Amended Complaint that I have considered as the operative pleading in the case.  It names as defendants several VDOC administrators and prison officials: Harold W. Clarke, former VDOC Director; David A. Robinson, VDOC Chief of Operations; G. Holloway, Chief Regional Administrator; Carl Manis, Regional Administrator; P. White, Warden; L. Graham, Operation Manager; J. Chittum, Grievance Coordinator; Mark Amonette, Chief Physician; Adam Wyatt, Chief Dentist; and Jeffery Dillman, Health Services Director.  Brown also names as defendants three medical providers at Augusta — T. Coyner, a dental assistant; K. Smith, a physician; and Werner Wiedemann, a dentist. Brown alleges that while he was confined at Augusta in 2020 and 2022, the defendants' actions or inactions deprived him of adequate dental care constituting deliberate indifference to his serious medical needs.  He seeks compulsory damages.

Brown, age 64, alleges that he was born with a rare disease that makes him vulnerable to having infections elsewhere in the body attack his heart valves.   He claims to have had four open heart surgeries made necessary from infections that damaged his heart valves and that he has two mechanical heart valves and a pacemaker.

---

[1]   Brown is now incarcerated at another Virginia prison, Deerfield Correctional Center (Deerfield).

In November 2020, Brown was confined at Virginia's Red Onion State Prison (Red Onion) and developed a gum infection from a deteriorated dental filling. A doctor at Red Onion prescribed antibiotics, and a dentist put in a temporary filing, and noted that Brown had strong healthy teeth. In April 2021, after his transfer to Augusta, Brown saw the contract dentist, Dr. Wiedemann, for a gum infection. The dentist allegedly recommended extracting Tooth 24 as the cause of the recurring infections, but Brown refused extraction, based on the Red Onion dentist's findings. Dr. Wiedemann said that COVID-19 restrictions prevented him from performing non-emergency dental treatment to repair the tooth, that the waiting list for such care was backed up two years, and that Brown's best option was to have the tooth extracted. Brown insisted that repair of his tooth was an emergency because of his heart issues. Neither the dentist nor any other prison official Brown informed took any action to get Brown emergency dental care.

Months later, when Brown asked for treatment for another possible gum infection, Dr. Wiedemann allegedly refused to treat him immediately because of inadequate resources at Augusta, citing VDOC Operating Procedure (OP) 720.6. Dr. Wiedemann also told Warden White that Brown's needs did not require outside dental treatment. In addition, Augusta's institutional physician, Dr. Smith, allegedly refused to arrange treatment by an outside dentist for Brown's dental needs, despite knowing of his heart problems.

A local cardiologist who examined Brown in September 2021 allegedly told him that consequences of untreated dental infections could be deadly for him. Brown spoke with Dr. Wiedemann and Dr. Smith about the cardiologist's warning. The dentist told Dr. Smith that extraction of one tooth would take care of the infection problem, and Dr. Smith said he would not go against the dentist's professional advice.

Brown filed this lawsuit in May 2022, and officials sent him soon after to an outside dentist for extraction of Tooth 24.    After speaking to that dentist, Brown decided against extraction of Tooth 24.  In October 2022, the dentist decided that Teeth 31 through 29 were the cause of Brown's gum infections.   Brown also claims that after delays of dental care in 2020–2021, he was diagnosed with seven additional cavities.

I previously granted in part and denied in part the defendants' motions to dismiss. *Brown v. Coyner*, No. 7:22CV00251, 2024 WL 1374807, at *1 (W.D. Va. Mar. 30, 2024).  I left the following claims to be decided:

1.    Dr. Wiedemann was deliberately indifferent to Brown's serious medical need for dental treatment, in violation of the Eighth Amendment;

2.    Defendants Manis, Holloway, Robinson, Clarke, Amonette, Wyatt, and Dillman were deliberately indifferent to Brown's serious medical need for dental treatment, in violation of the Eighth Amendment;

> 3.   VDOC restrictions allowing delay or denial of nonemergency
>       dental treatment, based on COVID-19 restrictions or shortages in
>       facility staffing and resources, are unconstitutional, and VDOC
>       administrators Clarke, Robinson, Amonette, Wyatt, and Dillman,
>       as policy makers, should be liable because application of these
>       policies violated Brown's Eighth Amendment rights by delaying
>       necessary dental care;
>
> 4.   Dr. Smith was deliberately indifferent to Brown's serious
>       medical need for dental treatment, in violation of the Eighth
>       Amendment;
>
> . . . .
>
> 6.   Warden White was deliberately indifferent to Brown's serious
>       medical need for dental treatment, in violation of the Eighth
>       Amendment; and
>
> . . . .
>
> 8.   Defendant Graham was deliberately indifferent to Brown's
>       serious medical need for dental treatment, in violation of the
>       Eighth Amendment. . . .

*Id.* at *5. I granted the defendants' motions to dismiss as to "all claims of vicarious liability, all claims against the defendants in their official capacities, all First Amendment and Fourteenth Amendment claims, all claims against defendant Chittum" and all claims against defendant Coyner. Now before me are four motions for summary judgment, filed by the remaining defendants and Brown, and the plaintiff's responses to those motions.[2]

---

[2] Dr. Smith and Dr. Wiedemann have filed separate summary judgment motions, each supported by a declaration from the defendant and attached medical records. Mem. Supp. Mot. Summ. J., Smith Decl., ECF No. 124-1; Mem. Supp. Mot. Summ. J. Ex. A., Wiedemann Decl., ECF No. 130-1. The other defendants (Amonette, Clarke, Dillman, Graham, Holloway, Manis, Robinson, White, and Wyatt) have filed a joint summary

## II. Evidence on Summary Judgment.

Based on Dr. Wiedemann's personal recollection and dental records, he presents the following evidence. On April 20, 2021, Dr. Wiedemann saw Brown in response to an Emergency Grievance about a bump beside Tooth 29 (the lower right bicuspid), in which he had a temporary filling. Brown reported that his tooth and jaw were asymptomatic. Dr. Wiedemann's examination of Tooth 29 revealed an obvious swelling of the buccal plate, a temporary filing on the distal aspect, and an occlusal amalgam (filling) with no mobility. The dentist took a periapical X ray of Teeth 28 and 29 that revealed a deep temporary filling on Tooth 29 that extended almost to the pulp, as well as an apical lesion on the tip of the root. Dr. Wiedemann diagnosed Brown with an infection of a deep temporary filling to Tooth 29. He classified the dental condition as Class 2, or low priority. Because Brown was asymptomatic other than the non-painful bump, he recommended, and Brown agreed, to medicate and watch Tooth 29. Dr. Wiedemann prescribed antibiotics for seven days, and Brown indicated he would notify the dental staff if he had any further trouble with that tooth.

On April 20, 2021, Dr. Wiedemann also completed Brown's dental charting. This documentation indicated that Brown was missing Teeth 1 (upper right third

---

judgment motion, supported by the defendants' affidavits. Mem. Supp. Mot. Summ. J., ECF No. 135. Brown has filed a document, ECF No. 141, that he refers to as seeking summary judgment, but it also asks for denial of the defendants' motions.

molar), 2 (upper right second molar), 4 (upper right second bicuspid), 5 (upper right first bicuspid), 10 (upper left lateral incisor), 12 (upper left first bicuspid), 13 (upper left second bicuspid), 14 (upper left first molar), 16 (upper left third molar), 17 (lower left third molar), 19 (lower left first molar), 30 (lower right first molar), and 32 (lower right third molar).  The charting also indicates that Brown had existing fillings on Teeth 3 (upper right first molar), 15 (upper left second molar), 18 (lower left second molar), 20 (lower left second bicuspid), 21 (lower left first bicuspid), 24 (lower left central incisor), 28 (lower right first bicuspid), 29 (lower right second bicuspid), and 31 (lower right second molar).  Dr. Wiedemann also noted that Brown has prosthetic heart valves and a pacemaker, is allergic to penicillin, has had rheumatic fever, and reported having had four open heart surgeries and a history of heart disease, heart murmur, hypertension, blood clotting problems, and respiratory disease.  He also noted Brown's report that he had smoked for twenty years and had chronic lung disease.

In the next several months, Brown filed numerous request forms to the dental staff, complaining that he should receive immediate or outside dental care because of his heard issues.  Staff reviewed and responded to these requests, advising Brown that COVID-19 restrictions limited outside dental care and that the Augusta dental office had no full-time dental assistant.  Staff repeatedly informed Brown, however, that he was on the list for a non-emergency dental exam.  In response to Brown's

request in late August 2021, staff informed him that VDOC policy at the time prohibited any inmate from being sent to an outside dentist for routine dental care.

On September 7, 2021, Dr. Wiedemann answered Brown's Emergency Grievance, raising an issue similar to his complaint in April of 2021. The dentist refilled Brown's prescription for antibiotics and ordered that he be scheduled for the next available appointment time.

On September 8, 2021, Dr. Wiedemann saw Brown who complained of a swelling, but reported that the tooth was otherwise asymptomatic. When the dentist examined Brown, he noted a swelling localized to the lingual aspect of Tooth 24, which had an existing composite filling in good condition. Tooth 25 presented with a failed, existing filling and with recurrent caries. One periapical X ray revealed an apical lesion on Tooth 24 and a large chip on more than one surface of that tooth. Dr. Wiedemann found no obvious apical pathologies present on Tooth 25. He diagnosed Brown with a periapical abscess to Tooth 24 and caries to Tooth 25, both classified as nonemergency dental needs. He ordered that Brown be scheduled for extraction of Tooth 24 and restoration of Tooth 25. The dentist performed caries removal on Tooth 25 and placed a temporary filing on that tooth. He educated Brown about oral hygiene and advised Brown to allow removal of Tooth 24. Dr. Wiedemann determined that a filling would not be adequate treatment for Tooth 24

and due to its condition, Brown's general dental hygiene, and his multiple carious teeth, he was not a candidate for root canal therapy.

On September 9, 2021, Dr. Wiedemann consulted with Dr. Smith about having Brown pause his Warfarin, a medication to prevent blood clots, in order to prepare for the upcoming extraction. The dentist next saw Brown on September 10, 2021, for a pre-surgery consultation, in which they discussed stopping Warfarin for five days prior to the extraction of Tooth 24 and taking pre-operative antibiotics because of his prosthetic heart valves. Brown asked to delay the extraction until after a soon-to-be-scheduled procedure to replace batteries in his pacemaker and defibrillator. Dr. Wiedemann agreed to this delay and advised Brown to notify dental staff once the procedure had been completed so he could proceed with the extraction.

On September 21, 2021, Brown filed a request asking to have his tooth extracted as soon as possible, but he did not want to pause his blood thinner medication beforehand. Staff noted that the dentist would confer with Dr. Smith about this request. Brown did not notify dental staff that his pacemaker issues had been addressed. Although Brown asked again for more antibiotics, the dental staff refused such requests absent a change in symptoms.

On January 6, 2022, Brown filed a request for his operative work to be performed. Staff responded, stating that due to staffing shortages, he would remain

on the examination list.  In response to Brown's complaints in February and March 2022, that he had not had cavities repaired, staff stated that he remained on the examination list.

On March 10, 2022, Dr. Wiedemann saw Brown in the dental office to consult with him about his treatment plan.  The dentist noted on Brown's report that all teeth were asymptomatic, and exam of Tooth 24 revealed no swelling.  Brown reported that Teeth 6 and 7 needed fillings.  But on exam, the dentist found that these teeth showed shallow caries that did not require immediate treatment.  The dentist advised Brown to notify dental staff if his teeth became symptomatic.  On March 24, May 19, and June 2, 2022, dental staff responded to Brown's demands for outside dental care and his complaints about inadequate care at Augusta.  Staff advised him that he remained on the list to be seen if he experienced an emergency condition or when staffing shortages were addressed.

On August 18, 2022, another dental provider reviewed Brown's medical history and performed X rays of Brown's teeth.  Thereafter, Brown was scheduled for an off-site procedure at Beaumont Correctional Center (Beaumont), where a new dental clinic had begun taking patients in July 2022.  Brown saw a provider at Beaumont on September 12, 2022, who performed fillings to Teeth 3, 6, and 7.  Dr. Wiedemann consulted with Dr. Smith on October 5, 2022, about pausing Warfarin for four days before any extraction appointment for Brown and then ordered a pause

in that medication for Brown from October 22 to 26, 2022.  Dr. Wiedemann also prescribed prophylactic antibiotics for Brown.  Brown later decided not to comply with the Warfarin hold, but after consultation with Dr. Smith, Dr. Wiedemann approved Brown for extractions if necessary.

On October 26, 2022, Brown saw a provider at Beaumont, for possible extraction of Tooth 24.  At that time, the provider noted that Tooth 24 was asymptomatic, had no mobility, and was not causing any pain.  Brown did not want the tooth extracted, so no extraction occurred.  On November 20, 2022, Dr. Wiedemann prescribed prophylactic antibiotics for Brown's next upcoming off-site appointment at Beaumont.  After consultation with Dr. Smith, he did not order a preoperative hold on Brown's Warfarin.  On November 15, 2022, Brown consented to extraction of Tooth 31.  Brown transferred from Augusta to Deerfield on December 28, 2022.

Dr. Smith, a licensed physician with residency training in family medicine, provided medical care to Augusta inmates from 2015 through May 2023, and served as Medical Director for five years of that time.  His evidence overlaps significantly with Dr. Wiedemann's evidence.  Brown came to Augusta in April 2021.  During intake, medical staff identified him as requiring referral to the physician because of his implantable cardioverter defibrillator (ICD), similar to a pacemaker and used to

monitor and regulate heart rhythms. The intake form also documented Brown's history of congestive heart failure, other heart issues, and respiratory disease.

Dr. Smith examined Brown on April 12, 2021, noting that Brown was overdue for a battery check or replacement for his cardiac device. The doctor ordered that he be scheduled with a cardiac expert as soon as possible after the two-week quarantine then in effect because of the COVID-19 protocols; he marked this order as urgent. Dr. Smith followed up on this order and ensured that Brown saw an expert about his cardiac device.

In April 2021, Dr. Wiedemann, dentist for Augusta inmates, diagnosed Brown with a gum infection near Tooth 29, ordered medication to treat the infection, and advised Brown to follow up if any other problems arose. Dr. Wiedemann saw Brown on September 8, 2021. After the dental examination, Dr. Wiedemann noted a recommended plan to schedule Brown to have an extraction of Tooth 24 and to restore Tooth 25. On September 10, 2021, Dr. Wiedemann talked to Brown about the planned extraction, noting:

> Consult with pt. regarding warfarin and necessity of stopping this medication for 5 days prior to an extraction. Also mentioned need for antibiotics pre-med due to prosthetic heart valves. Pt. understood both issues, however, he is due to have pacemaker/defibrillator batteries replaced at any time and would like to delay the extraction until after that procedure is completed (he states he saw the cardiologist 2 weeks ago and doesn't know exactly when that appointment will occur). I concur with his decision. Pt. states the antibiotic has improved the tooth situation significantly already and the tooth remains asymptomatic. Pt. will notify us when he is ready to proceed.

Wiedemann Decl. Ex. A.A at 21, ECF No. 130-1.  On September 23, 2021, Dr. Wiedemann documented a conversation with Dr. Smith about medications prior to removal and replacement of the ICD device.  Dr. Wiedemann also noted that Brown "is fine, teeth are not hurting, nor are the gums." *Id.* at 22.

Brown underwent a cardiology procedure on October 4, 2021, at Augusta Health to replace his ICD device.  Dr. Smith saw Brown on October 6, 2021, and prescribed a post-operative antibiotic.  A note in the dental records indicates that Brown asked the next day for more antibiotics, but the dentist found no need unless Brown's symptoms changed.  Other cardiology exams and procedures followed later in October 2021 and in January 2022.

The dental team noted on December 9, 2021, that Brown had complained about not receiving timely dental care.  The team reiterated that Brown's dental procedures had been put on hold until after his pacemaker procedure and that Brown was to notify dental staff after the cardiac issue had been resolved.

Dr. Smith notes Brown's cardiology evaluation of his ICD in late January 2022.  However, Dr. Smith does not recall that the cardiologist spoke to him about arranging an appointment for Brown with an outside dentist or remember any discussions with that specialist about dental issues.

On March 3, 2022, Dr. Smith saw Brown and noted the inmate's complaints:

> He is upset about the length of time it is taking to receive dental care.
> He is very upset that the dentist is allegedly refusing to do anything
> other than pull teeth. I expressed compassion and explained that while
> I sympathize with him I was not able to control how the dentist ran his
> practice. He was quite understanding of this.

Smith Decl. at ¶ 33, ECF No. 124-1.

Dental records indicate that Dr. Wiedemann saw Brown for a dental examination on March 10, 2022, and classified his issues as minor. Records also show Brown was seen at Beaumont on August 18, 2022, and returned to that facility for dental care on September 12, October 26, and November 15, 2022. As to each of these visits, Dr. Wiedemann signed off on the chart, indicating that he had reviewed the offsite treating dentist's notes. In October and November 2022, after the offsite dentist recommended tooth extractions, Dr. Wiedemann documented consulting with Dr. Smith and determining that no pause of Brown's Warfarin medication prior to the extractions would be imposed.

Dr. Smith last saw Brown in the chronic care clinic on December 28, 2022, just before his transfer to Deerfield. He noted that overall, Brown was doing well. He reported no unusual bleeding on his blood thinner medication, and his vital signs, oxygen saturation, and weight were stable. Dr. Smith reviewed labs and ordered new labs and a follow up with cardiology.

Dr. Smith states that as Medical Director at Augusta, he oversaw the medical care that a private contracting company provided to inmates. Since Dr. Smith is not

a dentist, he states that making recommendations about dental care would be outside the scope of his medical practice. Moreover, the medical and dental departments were two separate entities, with the dental department managed by VDOC. Thus, Dr. Smith relied on the dentist to determine Brown's dental needs, other than consultations about medications that might have an impact on other, chronic medical conditions.

## II. DISCUSSION.

### A. The Summary Judgment Standard.

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, Brown must present sufficient evidence that could carry the burden of proof of his claims at trial. *Id.* at 249. He "must set forth specific facts showing that there is a genuine [factual] issue for trial" on which the jury could find in his favor. *Id.* at 248.[3]

---

[3] I have omitted internal quotation marks, alterations, and/or citations here and throughout this Opinion unless otherwise noted.

B. The Eighth Amendment Standard.

"[S]ociety does not expect," nor does the Eighth Amendment require, that inmates have "unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). Rather, only "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain" that violates constitutional protections. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Thus, the prisoner plaintiff must show that, objectively, he was suffering from a serious medical need and, subjectively the prison staff was aware of the need for medical attention but failed to respond reasonably to that need. *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

"A deliberate indifference claim consists of two components, objective and subjective." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). Objectively, the inmate's medical condition must be serious" in the sense that it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* "A medical condition need not be life threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010); *accord Scott v. Clarke*, 64 F. Supp. 3d 813, 822 (W.D. Va. 2014).

> [A] tooth cavity is a degenerative condition, and if it is left untreated
> indefinitely, it is likely to produce agony and to require more invasive
> and painful treatments, such as root canal therapy or extraction," and
> "presents a serious medical need." Furthermore, an abscessed tooth "is

> not a simple toothache.  It is a bacterial infection of the root of the tooth,
> and it can spread to the adjacent gum and beyond — way beyond.  It is
> often painful and can be dangerous.

*Formica v. Aylor*, 739 F. App'x 745, 756 (4th Cir. 2018) (unpublished).

Subjectively, the prison official must have "actual . . . knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's [own] action or inaction." *Jackson*, 775 F.3d at 178.  *Id.*  "[W]hen a medical professional of a jail facility knows of a serious medical need, the Eighth Amendment requires reasonable action." *Formica*, 739 F. App'x at 757.  Put another way, the defendant must have known the plaintiff was suffering from a condition which pose[d] a risk to the prisoner such that it "would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Id.* at 755.  "The necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally denying or delaying medical care, or intentionally interfering with prescribed medical care." *Id.* at 754.

Furthermore, to be unconstitutional, a defendant's conduct must have been "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier ex rel. Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Specifically, "delay can rise to the level of an Eighth

Amendment violation when the delay results in 'some substantial harm to the patient' such as a 'marked exacerbation of the prisoner's medical condition' or 'unnecessarily prolonged an inmate's pain.'" *Wilder v. Krebs*, No. 2:17-763-CMC-MGB, 2018 WL 4020211, at *3 (D.S.C. Aug. 23, 2018) (quoting *Formica*, 739 F. App'x at 755). On the other hand, "[a]n inmate's mere disagreement with the course of treatment provided by medical officers will not support a valid Eighth Amendment claim." *Jackson v. Sampson*, 536 F. App'x 356, 357 (4th Cir. 2013) (unpublished). "[T]he essential test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977).

C.  Brown's Separate Deliberate Indifference Claims.

Brown's many submissions essentially raise two deliberate indifference arguments.  First, that the dentist allegedly made erroneous decisions about Brown's dental care needs, as allegedly proven by decisions made months later by another dental professional.  Second, the other defendants did not properly classify and address his dental issues as emergencies because of his heart issues.

Brown's claims against Dr. Wiedemann center on Brown's opinion that the dentist misdiagnosed which tooth had caused what Brown refers to as reoccurring gum infections.  This contention rests on records showing that a different dentist, months later, determined that different teeth were then causing problems and should

be extracted.  Such "mere disagreements among physicians or between a prisoner and his physician do not equate to deliberate indifference."  *Chamberlain v. Mathena*, No. 7:19-CV-00879, 2021 WL 789858, at *4 (W.D. Va. Mar. 1, 2021) (citing *Hogge v. Stephens*, No. 3:09CV582, 2010 WL 3834856, at *5 (E.D. Va. Sept. 24, 2010) ("A mere disagreement between doctors does not establish that one doctor was deliberately indifferent."), *aff'd*, 469 F. App'x 160 (4th Cir. 2012)).

Moreover, the two dentists based their diagnoses and treatment decisions on different symptoms Brown exhibited many months or even years apart.  Even if Dr. Wiedemann, in responding to the symptoms presented to him in April and September of 2021, made a misdiagnosis or ill-advised treatment decision, such actions are, at most, medical negligence, which does not rise to the level of a constitutional claim.  *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

The Fourth Circuit has held that an abscessed tooth, or a tooth cavity if "left untreated indefinitely" so that they cause degeneration and pain, can be serious medical needs.  *Formica* 739 F. App'x at 756.  Taken as a whole, however, evidence of Dr. Wiedemann's treatment of Brown's dental issues does not support any claim of deliberate indifference.  The undisputed medical records indicate that Dr. Wiedemann prioritized Brown's emergency grievance requests concerning dental

care in April and September 2021 and examined him as soon as possible to evaluate his then-current condition and address any urgent needs.

On April 20, 2021, on the day that Brown filed his emergency grievance, the dentist visually examined Brown's teeth, took X rays, and prescribed antibiotics to treat a diagnosed gum infection.  Brown reported no pain, so the dentist advised him to contact dental staff if he had further trouble with Tooth #29, the tooth at issue during the April exam.[4]  Instead of doing so, in the summer of 2021, Brown complained to dental staff repeatedly, about being denied dental care, although they had no record of receiving any request for specific dental care from Brown, and asking to see an outside dentist.  Wiedeman Decl. 16–18, ECF No. 130-1.  Staff notified Brown that they could only provide emergency care at present but would place or retain him on the list for non-emergency care.

When Brown next filed an emergency grievance about his dental needs in September 2021, he was scheduled to see Dr. Wiedemann within a day.  At no time, did Brown present to Dr. Wiedemann complaining of pain in a tooth or gums.  During the September 8, 2021, exam, the dentist visually examined Brown's teeth, took X rays, diagnosed a pain free bump as an abscess near Tooth 24, prescribed antibiotics, and diagnosed caries on Tooth 25.  He removed some caries and placed

---

[4]  Brown alleges that Dr. Wiedemann told him at the April 2021 exam that tooth 24 was the cause of the infection.  Medical records do not support this claim, although the dentist did identify Tooth 24 as being a problem during the September 2021 examination.

a temporary filling in Tooth 25. Indeed, after Brown took the antibiotics, he soon reported that Tooth 24 was asymptomatic. Dr. Wiedemann recommended extraction of Tooth 24, based on his belief that its condition could not be restored by a filling or even a root canal. The court cannot second-guess such medical judgments. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975).

Brown's heart condition placed him at a higher-than-normal risk of harm from infections and other dental procedures. However, Dr. Wiedemann considered Brown's heart condition in assessing Brown's condition and prescribing treatment. He conferred with Dr. Smith about how to handle related medications before any scheduled tooth extraction. Although he and Dr. Smith would have preferred to stop Brown's Warfarin prescription for five days before any extraction, Brown refused and suffered no heart-related effects from tooth extractions.

Furthermore, Brown himself bears responsibility for some of the delay in his dental care. When extraction of Tooth 24 was to be scheduled in 2021, Brown asked for it to be postponed, pending his cardiac procedure, and delayed for months advising the dental department that the cardiac procedure had been completed. Once Beaumont's dental department could take patients, Dr. Wiedemann referred Brown to that facility for extraction of Tooth 24, but Brown refused that treatment.[5] In

---

[5] Brown decided against extraction of Tooth 24, based on a different dentist's diagnosis of its condition months after Dr. Wiedemann made the initial recommendation. These disagreements between dentists' recommendations do not prove that Dr.

short, Dr. Wiedemann offered Brown prompt and attentive evaluation of any reported dental needs and prescribed treatment for any such needs. Such medical treatment does not fall within the scope of deliberate indifference. *Coker v. Corizon Med. Servs.*, 645 F. App'x 888, 891 (11th Cir. 2016) (unpublished) (affirming summary judgment for defendant dentists where defendants identified and offered to resolve the plaintiff's dental needs, but plaintiff refused treatment and demanded different treatment).

Brown also claims that Dr. Wiedemann at one point told him that Dr. Smith, as Brown's primary care physician, could decide whether referral to an outside dental clinic was warranted. Dr. Smith's evidence, which Brown has not refuted, reflects that the medical department and the dental department were separate entities, and that Dr. Smith had no expertise to bring to bear on any of Brown's dental issues. Moreover, the record indicates that the two providers consulted frequently on how to safely adjust Brown's heart-related medications prior to dental procedures. These facts do not support any claim that either professional knew that the dental procedures provided to Brown, or the nonemergency dental care recommended and postponed due to appointment backlogs and staffing shortages, placed him at an excessive risk of harm and ignored that risk. Certainly, Brown has not shown that

---

Wiedemann violated Brown's constitutional rights through his differing diagnosis months earlier when viewing different symptoms.

Dr. Wiedemann's or Dr. Smith's actions were "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier,* 896 F.2d at 851. I also find no material disputed fact on which Brown could persuade a jury that the dentist or physician was deliberately indifferent to any serious medical need. Accordingly, I will grant the motions for summary judgment these defendants have filed and deny Brown's summary judgment motion against them.

I make similar findings as to Brown's Eighth Amendment claims against defendants Manis, Holloway, Robinson, Clarke, Dillman, White, and Graham. Brown allegedly informed each of these individuals, through grievances, appeals, or contacts with his family, of his belief that his dental needs in 2020 and 2021 should be treated as an emergency because of his cardiac issues and that he should be referred to an outside dental facility for treatment.

The defendants' evidence as to each of these individuals shows that none of them is a dentist or a cardiologist. Thus, each of them could rightfully rely on Dr. Wiedemann, and to some extent, on Dr. Smith as Brown's treating physician, to evaluate whether at any specific time, Brown's nonemergency dental problems presented an excessive risk of harm if left untreated until the backlog cleared, or new dental staff or facilities became available. Therefore, I will grant summary judgment for Manis, Holloway, Robinson, Clarke, Dillman, White, and Graham as to Brown's

Eighth Amendment claims, and deny Brown's motion seeking summary judgment on such claims.

Two other defendants, Dr. Wyatt, as Chief Dentist, and Dr. Amonette, as Medical Director and Chief Physician in 2021, are also entitled to summary judgment on the Eighth Amendment claims.

It is undisputed that Dr. Wyatt serves as the administrative clinical manager of dental care to VDOC inmates. He does not travel to the prisons to administer dental care or treatment to prisoners. He also does not intervene in any dental clinician's decision regarding treatment of that clinician's assigned inmate patients. Rather, he relies on the professional opinions of the dental clinicians regarding patient care.

One of Dr. Wyatt's duties is to review, inquire about, and respond to Level II inmate grievance appeals about dental issues. In fulfilling this duty, Dr. Wyatt relies on information provided by an inmate's caregiving dentist. On July 27, 2021, he contacted Dr. Wiedemann about Brown's claim of being denied access to dental care. Dr. Wiedemann responded that he had reviewed Brown's chart and provided a summary of his contact with Brown on April 20, 2021. Based on this information, Dr. Wyatt informed defendant Dillman who issued a Level II response that the grievance was unfounded.

Similarly, Dr. Amonette was an administrator in 2021, not a clinical physician. His job duties included peer review of VDOC medical providers for management of chronic diseases, assisting in formulation of standard treatment guidelines and procedures, discussing cases to assist in determining best management of a medical condition, providing offsite care for inmates, and investigating complaints about inmate care, as needed. Dr. Amonette states that he "did not make decisions or recommendations regarding the diagnosis or treatment of inmate's medical or dental needs unless [he] was conducting utilization reviews for off-site care, consulting with a treating physician, or responding to a complaint about care." Mem. Supp. Mot. Summ. J. Amonette Aff. ¶ 4, ECF No. 135-1. Rather, the undisputed evidence is that Dr. Amonette's job was to ensure that contract doctors complied with medical operating procedures. He relied on the professional judgment of the treating doctors and did not substitute his own judgment for their opinions regarding an inmate's treatment. The Chief Dentist, not the Medical Director or Chief Physician, would be responsible for approving off-site dental care for an inmate, if recommended by the institutional dental provider. Amonette did not review any off-side care request for Brown while he was at Augusta in 2021-2022.

As discussed, I find no respect in which Dr. Wiedemann or Dr. Smith has acted with deliberate indifference toward Brown's dental needs. Thus, Dr. Wyatt

and Dr. Amonette could rightfully rely on Dr. Wiedemann and Dr. Smith to supervise necessary dental care for Brown and to ensure proper protection for his compromised heart. While Brown expressed to Dr. Wyatt and Dr. Amonette his layman's opinion that his untreated cavities and other dental needs warranted off-site, emergency treatment, the administrators had no medical evidence from Brown's providers suggesting that off-site treatment was warranted on an emergency basis at the times of which Brown complains. I conclude that Dr. Wyatt and Dr. Amonette are entitled to summary judgment, and that Brown's summary judgment motion against them must be denied.

### D.  Brown's Claims of Unconstitutional VDOC Policies.

In Brown's Claim 3 he contends that defendants Clarke, Robinson, Amonette, Wyatt, and Dillman should be liable for VDOC restrictions on dental care in 2020 and 2021 that were unconstitutional because they prevented him from receiving sooner care that he believed was essential for his health. He apparently refers to the COVID-19 restrictions allowing dentists to address only urgent or emergency dental needs and to OP 720.6, which recognizes that nonemergency dental care may be delayed in cases of staffing shortages. Brown fails to make the case that either of these restrictions is unconstitutional.

Dr. Wyatt has provided evidence about VDOC dental policies, among other things, in his affidavit in support of summary judgment. Generally, OP 720.6

governs dental services for VDOC inmates.  Dr. Wyatt is responsible for reviewing, updating, or rewriting this policy regularly, as needed.  This procedure is designed as guidance for provision of adequate, necessary, and cost-effective dental care to inmates.  Under VDOC COVID-19 restrictions, the dental policy did not deny any inmate urgent (Class 3) or emergent (Class 4) dental care.  Rather, VDOC administrators adjusted procedures to comply with the Governor's orders to provide any such essential dental care and postpone only nonurgent or nonemergent care.

Under state laws governed by the Virginia Board of Dentistry (Board), each dentist is considered the clinical supervisor of his or her individually assigned dental clinic and staff.  The Board is the sole governing body, charged with determining if a licensed dental practitioner in Virginia continues to practice legally and in accordance with the standard-of-care guidelines this Board defines.  Each dentist is considered "accountable to the [B]oard for any clinical instructions (direct/indirect supervision) to be performed during the dental treatment of their patients within their practice."  Mem. Supp. Mot. Summ. J. Wyatt Aff. ¶ 7, ECF No. 135-8.  Whatever a dentist's organizational position or associated job duties, including administrative tasks, each dentist is held individually accountable under his or her professional dental license to practice dentistry in accordance with the Board.  This professional obligation for all Virginia dentists remained in effect during and after the COVID-19 pandemic.  Moreover, the Board holds each licensed dentist accountable to

practice under the Board's Dentistry Guidelines, which incorporate provisions from other regulatory and standard-of-care practices set forth by the American Dental Association.

VDOC dental leadership consists of the Chief Dentist, Regional Dental Clinic Directors, and Dental Supervisors.  The function of these officials is to provide administrative supervision to clinical providers and their assigned clinical staff, such as dental hygienists and dental assistants, and to make clinical recommendations based on current research, evidence-based practices, and organizational administrative directives.  VDOC Dental Leadership initiatives are formed to help ensure that each licensed dental practitioner, as a clinical supervisor, remains free to govern his or her practice while making informed clinical decisions "without conflicting the governing bodies."   Id. at ¶ 11.   VDOC dental leadership professionals and the Board are not positioned to dictate treatment options or methods of treatment to licensed dental practitioners.

VDOC dental leadership received notice of the COVID-19 airborne threat in early March 2020.  The Governor declared a State of Emergency through Executive Order No. 51 on March 12, 2020.  At that time, Dr. Wyatt, as VDOC Chief Dentist, notified all VDOC dentists of the recommendation to suspend all non-essential treatment and to perform any in-person treatment using "N95 (single use) protection" until further notice from the regulatory agencies.  Wyatt Aff. at ¶ 15.

This directive is consistent with other protocols designed for pandemics or highly infectious disease.

On March 25, 2020, the Board, the Governor, and the state health commissioner issued notice of Commonwealth of Virginia Order of Public Health Emergency Two, directed to all licensed professional clinical providers and limiting care to essential treatment. VDOC released an official memo to its medical professionals and posted that memo on the VDOC Health Services Unit (HSU) policy/memorandum board. Dr. Wyatt immediately began providing daily updates to VDOC dental providers of information received from governing bodies. HSU's research team also processed and publicized peer-reviewed/evidence-based research practices related to the immediate COVID-19 pandemic threat, as passed along by state and national dental and medical associations. VDOC decisions related to dental pandemic policies were based on the most current guidelines set out by regulators. More specifically, instructions passed to all health authorities of medical and dental clinics throughout Virginia were to address essential care only during the pandemic through remote support. VDOC Dental, in response, attempted to create a safer clinical environment to provide triage and palliative treatment for dental needs rated as Class 3 and Class 4, using appropriate and available protective equipment. VDOC's COVID-19 dental policies conformed with policies in place during the same period in settings outside prison and jail facilities.

The defendants Brown indicated as possibly responsible for the challenged policies, Clarke, Robinson, Dr. Amonette, Dr. Wyatt, and Dillman, have moved for summary judgment, arguing generally that COVID-19 restrictions and OP 720.6 served legitimate penological purposes. On the evidence in the record, I must agree.

It is well established that a prison regulation which impinges on inmates' constitutional rights is still constitutional if it is reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 85 (1987). The Supreme Court has set out relevant factors for courts to consider in determining the reasonableness of a prison regulation: (1) a valid, rational connection between the prison regulation and legitimate, neutral penological interests put forward to justify it; (2) the presence of alternative means to exercise the rights that remain open to inmates; (3) the impact that accommodation of inmates' asserted constitutional rights will have on guards, other inmates, and the allocation of prison resources; and (4) an absence of obvious, easy alternatives to achieve the same penological objectives. *Id.* at 89–91. This analysis is grounded in the principle that the "prison administrators . . . , and not the courts, [are] to make the difficult judgments concerning institutional operations." *Id.* at 89. The inmate bears the burden to prove the invalidity of the challenged prison regulation. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

The COVID-19 pandemic presented medical professionals with new challenges in safely providing medical and dental care to anyone. The defendants'

evidence outlines the nature of national and state directives issued in 2020 and 2021 to anyone providing medical care to address only essential care and to use appropriate protective equipment when doing so.    VDOC dental leadership implemented these directives and relayed later updates from national health organizations to dental and medical professionals serving VDOC inmates.  But the defendants' evidence also reflects that neither the COVID-19 directives nor OP 720.6 recommended denying treatment for any VDOC inmate's urgent or emergent dental care needs. When a dental provider determined that an inmate needed such care, that provider was to schedule the inmate for treatment at the facility or, if that was not possible due to staffing or other issues, to order that he be transported to an outside facility for the necessary dental care.  I cannot find that such policies, particularly given the health and safety threat that COVID-19 posed to the inmate community and the country at larger, were contrary to the first facet of the *Turner* analysis.  Indeed, I find a rational connection between such regulations and VDOC's legitimate and neutral penological interest in preventing the spread of the COVID-19 virus among inmates or staff, while still fulfilling VDOC's obligation to provide necessary dental care.  The policies also met the second *Turner* facet — inmates could be placed on a waiting list for nonemergency dental care, to receive such treatment when the prison had safe resources to make it available.  The third *Turner* factor overlaps with the first, because keeping staff and other inmates safe during a

pandemic inevitably affects these populations and costs prison resources to implement new safety protocols. Finally, in response to the fourth *Turner* factor, Brown has not put forward any easy and available alternatives that VDOC officials could have implemented to achieve the same safety concerns, while focusing on providing inmates with necessary medical and dental care, as constitutionally required.[6] In fact, his case centers on his disagreement with his dental provider about whether his otherwise-nonemergency dental issues qualified for off-site emergency treatment or not, as already discussed.

Based on the evidence before me, I conclude that the administrative defendants (Clarke, Robinson, Amonette, Wyatt, and Dillman), in implementing

---

[6] Buried in one of Brown's many separate responses to the defendants' motions, are his complaints that after he sought discovery of COVID-19 directives on which VDOC officials relied, the defendants objected to this request as seeking documents difficult to produce and overly broad. While Brown's submission would normally have been docketed and addressed as a separate motion, since it was titled "Motion for Sanctions," I cannot find that the court's failure to treat it as such has resulted in prejudice to Brown. The so-called motion does not ask the court to compel further discovery responses, nor does it address the defendants' discovery objection or provide any more particularized list of COVID-19 directives that Brown sought to discover that were relevant to his claims. Most importantly, based on the defendants' undisputed evidence of VDOC implementation of the state and national COVID-19 directives, no policy applied to a VDOC inmate such as Brown ever called for denial of dental care that his treating provider assessed as medically necessary, the watch word for any policy alleged to affect an inmate's Eighth Amendment rights regarding medical care. *Bowring*, 551 F.2d at 48. For that same reason, I conclude that Brown has not demonstrated that the VDOC implemented any national or state COVID-19 restriction in such a way as to violate Brown's constitutional rights, which makes moot his burdensome discovery request for copies of all COVID-19 restrictions. Therefore, while I will direct that the Motion for Sanctions be docketed as such, I will also deny it as without merit.

state and national COVID-19 restrictions, and in applying OP 420.6, did not deprive Brown of urgent or emergent dental care as determined by his treating dental professional. Therefore, I find that these defendants are entitled to summary judgment, and that Brown's summary judgment motion must be denied as to this claim.

## III.    CONCLUSION.

For the reasons stated, it is hereby **ORDERED** as follows:

1.  The Clerk shall copy pages 9–12 of ECF No. 143-1 and docket those pages as a Motion for Sanctions. For the reasons discussed, that motion is hereby DENIED.

2.  The defendants' Motions for Summary Judgment, ECF Nos. 123, 129, and 134, are GRANTED, and the plaintiff's Motion for Summary Judgment, ECF No. 141, is DENIED.

A separate judgment will issue herewith.

ENTER:  March 17, 2025

/s/  JAMES P. JONES
Senior United States District Judge